Day, J.
The questions made iñ these cases are based chiefly on the act of April 27, 1869, authorizing county commissioners to erect court houses and other county buildings. 66 Ohio Laws, 52. The provisions of the act, so far as material in these cases, are as follows:
“ Sec. 7. That in all cases where it shall become necessary for the commissioners of any county to erect, or cause to be erected, any court house, * * * such commissioners, before entering into any contract for the erection * * * of such building, * * * shall make, or procure some competent architect to make a full, complete and accurate plan or plans for such court house, * * * in all its parts, showing all the necessary details of the work, together with working plans suitable for the use of the mechanics, or other builders, during the construction thereof, so drawn and represented as to be plain and easily understood ; and also accurate bills showing the exact amount of all the different kinds of materials to be used in the erection thereof, * # # to accompany the said plan or plans, and also full and complete specifications of the work to be done, showing the manner and style in which the same will be required to be done, and giving such directions for the same as will enable any competent builder to carry them out, and afford to bidders all needful information to enable them to understand what will be required in the construction * * * of any court house, * # * and to make, or cause to be made, a full, accurate and complete estimate of each item of expense, and the entire aggregate cost of such court house, * * * when completed.”
“Sec. 8. That such plans, drawings, representations, bills of materials and specifications of work, and estimates of the cost thereof, in detail and in the aggregate, as is required m the seventh section of this act to be made, * * * shall be submitted to the commissioners, together with the clerk of the court, the sheriff and probate judge, for their ap *318 proval, and if approved by them, or a majority of them, a copy thereof shall be deposited with the county auditor, by him to be safely kept in his office * * * for the inspection and use of parties interested.”
“Sec. 9. That after such plans, descriptions, bills of materials, specifications and estimates as are in this act required, are made and approved in accordance with the requirements of this act, it shall be, and hereby is, 'made the duty of the county auditor to give public notice, in at least two newspapers of the county, of the time and place when and where sealed proposals will be received for performing the labor and furnishing the materials necessary to the erection of any court house, * * * and a contract or contracts based on such sealed proposals will be made, which notice shall be published weekly six consecutive weeks next preceding the day named for the making of such contract or contracts, * * * which notice shall state when and where such plan or plans, descriptions, bills and specifications can be seen, and which shall be open to public inspection at all reasonable hours between the date of such notice and the making of such contract or contracts.”
“ Sec. 10. That it shall be competent for said commissioners, if for any cause they fail to make the contract or contracts, as herein provided for, on the day named iii the notice, as in this act required, to continue from day to day, until such contract or contracts be made; provided, that such contract shall be awarded to, and made with, the person or persons who shall offer to perform the labor and furnish the materials at the lowest price, and give good and sufficient bond to the acceptance of the commissioners for the faithful performance of their contracts, in accordance with the pllm or plans, descriptions and specifications herein required, which plan or plans, description or specification shall be, and are hereby made a part of such contract or contracts ; and, provided further, that such contract or contracts shall not be binding upon any county until they are submitted to the prosecuting attorney, of such county, and *319 by him found to be in accordance with the provisions of this act, and his certificate to that effect endorsed thereon.”
The eleventh section prohibits the making a contract in excess of the preliminary estimated price required by the act to be made. By the fifteenth section it is made a misdemeanor, punishable by fine and imprisonment, for the commissioners, or persons employed by them to superintend any part of the work required to be done, among other things to knowingly permit any deviation from the plans, descriptions and specifications of the contract in the work or materials, unless with the approval of all the officers to whom the plans, etc., are required by the eighth section of the act to be submitted for approval.
No question is made but that the proceedings preliminary to the awarding of the contract for the erection of the contemplated court house were in accordance with the requirements of the statute.
The auditor’s notice “To Contractors and Builders” stated that sealed proposals would be received at his office until six o’clock p. m. of June 21, 1871, “for furnishing all the materials, (except brick,) and performing all the work and labor (except the excavation) of building and erecting a court house in Greenville, O.,‘according to the plans and specifications now on file in said auditor’s office,” which can be seen at said office ; that the names of good and responsible bondsmen were required to accompany each proposal; and that blank forms for bids could be obtained at said office. The specifications were full and elaborate, and stated that “all excavations will be made by the commissioners,” and that “ all brick will be furnished by the commissioners.”
A large number of proposals were filed, the lowest three of which were those of E. L. Earman, Boren & Guekes and Rouzer & Rouzer, neither of which were in excess of the preliminary estimates. Earman’s bid was $87,500 ; that of Boren & Guekes was $102,105.71; and that of Rouzer & Rouzer was $115,000. The commissioners adjourned, from time to time, to June 30, 1871, when the contract was awarded to and made with Rouzer & Rouzer.
*320 Three days afterwards, and as soon as this was known to Boren & Guekes, they served a written notice on the commissioners and Rouzer & Rouzer, that they claimed the contract, and that they should institute proceedings to enforce their rights. On the sixth day of July, 1871, Boren & Guekes procured a temporary injunction against the commissioners and Rouzer & Rouzer, restraining them from further proceeding under the contract, until the rights of the parties could be determined by proper legal proceedings. On the eighteenth day of the same month this injunction was dissolved. Four days afterwards Boren & Guekes filed in this court their application for a mandamus against the commissioners, (making Rouzer & Rouzer parties to the proceeding,) to compel an award of the contract to them, of which the parties were then duly notified, and that the application would be for hearing at the next ensuing session of the court in October, as soon as the court would hear the same.
On the 26th day of the same month Farman filed a like application for a mandamus to compel an award of the contract to him, and made all the parties to the former case parties to his proceeding.
The proposal of Farman was the lowest, and the principal defence against his right to have the contract awarded to him, is based on the insufficiency of the bond tendered by him to secure his performance of the contract. The only objection to his bond was that the sureties thereon resided in the State of Indiana. The commissioners refused to award the contract to him unless he would give bond with sureties residing in this State. This Farmaii refused to do. Has he then any right to complain ? Surely not, if the requirement of the commissioners was reasonable, and if they had the power to make it. The statute under which the parties were acting leaves but little discretionary power to be exercised by the commissioners, but they are vested with this power as to the sufficiency of the bond required of the bidder by the act, to entitle him to have the contract awarded to and made with him. Undoubtedly this discre *321 tion must be exercised in a reasonable and proper manner. We cannot say the requiring of a bidder that the sureties on his bond must be residents of the State is an abuse of their discretionary power ; on the contrary, it is quite reasonable that resident sureties should be required, for otherwise the commissioners might be compelled to resort to foreign litigation, at great inconvenience and expense, under laws with which they are not familiar, and where resident sureties might be required of them in the beginning and during the progress of the litigation. Without intimating that it was the duty of the commissioners to require resident sureties on'the bond of a bidder, we do hold that such a requirement was not an improper exercise of their discretionary poAver in that matter.
To entitle a bidder to have the contract aAvarded to and made with him, he must not only offer to perform the labor and furnish the materials at the loAvest price, but he must “ give good and sufficient bond to the acceptance of the-commissioners.” The latter condition Farman failed to comply with. He had, then, no clear right to the contract. Not having this right he is not entitled to a peremptory writ, of mandamus. His application must, therefore, be dismissed.
Excluding Farman’s proposal, the next lowest, as appeared on the face of the proposals, was that of Boren &■ Guckes. Their proposal was made in accordance with the notice and the printed forms furnished by the commissioners to the bidders, and amounted, in the aggregate, to the sum of $102,105.71. Their proposal did not include “ excavation ” nor “ brick,” but did embrace all the work and materials for which proposals were invited in the notice, specifications, and printed forms of bids. No objection was-made to their proposal, nor to the sureties proposed by them, who were residents of the State, and shoAvn to be-abundantly responsible. Why, then, were they not entitled to have the contract awarded to them ? Because it is-claimed that the proposal of Rouzer & Rouzer, although apparently nearly thirteen thousand dollars higher than that *322 of Boren & Guckes, was, in fact, lower, for the reason that it embraced all the work and materials mentioned in the specifications, including the “ brick” and “ excavation;” and, it is claimed, (though we think the claim is not sustained by the evidence,) that the cost of the brick and excavation will amount to more than the difference between the two proposals. Whether this be so, cannot be determined without resort to evidence outside of the written proposal, and then must rest in parol and be uncertain, which is contrary to the manifest purpose of the act under which the whole business must be conducted.
Rouzer & Rouzer, in making their proposal, did not use one of the blank forms furnished to the bidders, but it is as follows:
“We propose to furnish all materials, do all work necessary for the erection and completion of the court house to be erected in Greenville, according to plans and specifications of A. Koehler, archt., for the sum of $115,000.”
How this proposal would have been construed, in the light of the statements about brick and excavations contained in the “ specifications,” if no less sum had been mentioned in other proposals, must be left to conjecture. But if this proposal does, in fact, include the brick and excavation, though not named, it is not only impossible to tell whether it is the lowest, but it embraces work, and a large amount of material, not submitted to the competing bids of their rivals. To allow contracts to be made on bids of this character would be an easy evasion of the statute, and open wide the door to favoritism, rings and frauds, in contravention of the manifest policy of the act; for if a contract, in a case like this, may be made, including brick, on proposals •called for on the balance of the structure only, a contract might as well be made for the entire edifice, on bids for brick, or any single item only, with a favorite who may bid for the whole without competition. It is the obvious policy '.and intention of the statute to render such favoritism impossible. The commissioners are invested with no such discretion. 'On the contrary, it is the clear intent and policy of *323 the statute to withhold it, and thereby shut the door against all favoritism. Such was the construction given to a similar statute, in regard to the erection of buildings for the State, in Beaver & Butt v. The Trustees of the Blind Asylum, 19 Ohio St. 97. The statute provides “ that the contract shall be awarded to, and made with, the person or persons who shall offer to perform the labor and furnish the materials at the lowest price.” The lowest price for what labor and materials ? Clearly the labor and materials for which proposals have been called by the notice and specifications, in pursuance of the statute. Any other construction would nullify the statute, aud be a fraud upon the bidders.
Construed, then, in the only manner in which the commissioners were, under the law, at liberty to consider the proposal of Rouzer & Rouzer, they did not “ offer to perform the labor and furnish the materials ” called for “ at the lowest price.”
But the construction claimed by them is equally fatal to their right to the contract; for, as already shown, the commissioners had no power to make a contract embracing work and materials not called for in the notice and specifications on which the proposals were made.
It follows that Rouzer & Rouzer were not entitled to have the contract awarded to them, and that their contract was made without the authority of the law. It also follows that Boren & Guckes, whose proposal was in compliance with all that was required, and for the lowest price, were entitled to have the contract awarded to and made with them, and that under the statute it was the imperative duty of the commissioners to award to and make the contract with them.
But it is objected, that the commissioners, having awarded the contract once, have exhausted their power, and cannot now be compelled to award the contract again. But the power conferred by the statute was, to award the contract to the lowest bidder. This they have not done, and the power to do this remains to be exercised by them. To hold that an unauthorized award of the contract exhausted their power to make the only awai’d and contract they were *324 authorized to make, would afford another easy mode by which the commissioners might nullify tho statute.
It is claimed that Rouzer & Rouzer have acted under their contract, and incurred much expense iu furnishing materials and performing labor. But the case shows the utmost vigilance on the part of Boren & Guckes to assert their rights; nor have they done any thing to waive their claim to the contract. All that has been done by the other parties has been in defiance of the rights of Boren & Guckes, and with full notice that they would be vigorously asserted by legal proceedings; and nearly ail has been done since such proceedings have been pending. No rights could be acquired by the opposing parties in this manner.
As to the right of a bidder under the act, in a proper case, to a remedy by mandamus, it is sufficient to say that it has already been recognized by this court in the case before-cited, and that in no other maimer can the rights of bidders,, and the manifest policy of the statute in relation to the public interests, be adequately secured and enforced.
A peremptory mandamus will be issued in favor of Boren & Guckes for the awarding of the contract to and making' it with them on the basis of their proposal.
Welch, C. J., and White, McIlvaine and West, JJ.,. concurred.